UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CAM EASH,<br><br>                Petitioner,<br>     v.<br>WILLIAM GITTERE, *et al.*,<br><br>                Respondents. | Case No. 3:19-cv-00488-MMD-CLB<br><br>ORDER |

**I.    SUMMARY**

This habeas corpus action was initiated under 28 U.S.C. § 2254, on August 14, 2019, by Petitioner Cam Eash, an individual incarcerated at Nevada's Ely State Prison. Respondents have filed an answer, and the case is before the Court for adjudication of Eash's petition on its merits. The Court will deny Eash's petition, will deny Eash a certificate of appealability, and will direct the Clerk of Court to enter judgment accordingly.

**II.    BACKGROUND**

After Eash was charged in a justice court and waived a preliminary examination, he was charged on October 6, 2015, by Information, in Nevada's Second Judicial District Court, with: (1) possession of a stolen motor vehicle; (2) eluding or failing to stop on the signal of a peace officer, endangering other persons or property; (3) possession of a firearm by a prohibited person; (4) robbery with a deadly weapon; and (5) grand larceny of a motor vehicle. (ECF Nos. 16-3, 16-4.)

On January 14, 2016, Eash entered into a plea agreement and pleaded guilty to eluding or failing to stop on the signal of a peace officer, endangering other persons or property, and robbery with a deadly weapon. (ECF Nos. 16-17, 16-18.)

On March 8, 2016, Eash was sentenced to: (1) 28 to 72 months in prison for eluding or failing to stop on the signal of a peace officer and endangering other persons

1 or property; (2) 72 to 180 months in prison for the robbery with a deadly weapon; and (3) 12 to 30 months in prison for use of the deadly weapon. (ECF No. 16-20.) The three prison sentences run consecutively. (*See id.*) The judgment of conviction was entered on March 14, 2016. (*See id.*)

Eash appealed, and the Nevada Court of Appeals affirmed the judgment of conviction on September 21, 2016. (ECF No. 16-35.)

Eash filed a post-conviction petition for writ of habeas corpus in the state district court on October 4, 2016. (ECF No. 16-36.) The court held an evidentiary hearing. (ECF Nos. 17-5, 17-17.) The court denied Eash's petition in a written order filed on March 14, 2018. (ECF No. 17-19.) Eash appealed, and the Nevada Court of Appeals affirmed on January 17, 2019. (ECF No. 17-35.)

This Court received a *pro se* habeas petition from Eash, initiating this federal habeas corpus action, on August 14, 2019. (ECF No. 6.) The Court reads Eash's petition to assert the following claims:

> Ground 1A: The trial court "abused its sentencing discretion by basing its sentence in part on the so-called 'victim-impact' statement of Officer Anthony Marconato."
>
> Ground 1B: "The supposed victim in the robbery has contacted [Eash's] family to say he wants to testify that he was threatened by Sparks police into making a false statement."
>
> Ground 2A: Eash's federal constitutional rights were violated as a result of ineffective assistance of counsel, because, before he pleaded guilty, his trial counsel inaccurately advised him about the sentence he could receive.
>
> Ground 2B: Eash's federal constitutional rights were violated as a result of ineffective assistance of counsel, because Eash's trial counsel first told Eash she had a statement from the robbery victim saying police threatened him with arrest unless he made a statement against Eash, then, at a later date, trial counsel told Eash she did not have such a statement and the robbery victim would testify against Eash.

(*See id.*)

On January 16, 2020, Respondents filed a motion to dismiss (ECF No. 15), arguing that certain of Eash's claims are unexhausted in state court and that certain of his claims are not cognizable in this federal habeas action. On May 7, 2020, the Court granted that

motion in part and denied it in part and dismissed Grounds 1A and 1B of Eash's petition. (ECF No. 20.)

On August 12, 2020, Respondents filed an answer (ECF No. 24), responding to Grounds 2A and 2B of Eash's petition. Eash did not file a reply.

## III. ANALYSIS

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on its merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. *See* 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. *See Williams v. Taylor*, 529 U.S. 362, 407–08 (2000).

To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id*. at 409-10; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011)

///

## B. Ground 2A

In Ground 2A, Eash claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel, because, before he pleaded guilty, his trial counsel inaccurately advised him about the sentence he could receive. (ECF No. 6 at 13.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States propounded a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's

4

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (2010) (acknowledging double deference required with respect to state court adjudications of *Strickland* claims).

The *Strickland* standard applies to claims of ineffective assistance of counsel in cases in which the defendant pleaded guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). In such cases, "[i]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Eash asserted the claim of ineffective assistance of counsel in Ground 2A in his state habeas action (ECF Nos. 16-36 at 8, 17-29 at 4), and on the appeal in that action, the Nevada Court of Appeals ruled on the claim as follows:

> Eash claimed defense counsel was ineffective for telling him that his sentence would be capped at 5 to 13 years for the robbery-with-the-use-of-a-deadly-weapon count. The district court held an evidentiary hearing and made the following findings. Counsel testified credibly she did not advise Eash that his sentence would be capped at 5 to 13 years for the robbery with the use of a deadly weapon. Judge Hardy told Eash he was not bound by the parties' sentencing agreement and he could sentence Eash to maximum sentences. And Judge Hardy told Eash what the possible sentences were. We conclude the district court's findings are supported by substantial evidence and are not clearly wrong, Eash failed to demonstrate counsel was deficient and he was prejudiced by counsel's performance, and the district court did not err by rejecting this claim.

(ECF No. 17-35 at 3.) The Nevada Court of Appeals' ruling was reasonable.

The written plea agreement that Eash signed stated:

> I understand that the Court is not bound by the agreement of the parties and that the matter of sentencing is to be determined solely by the Court. I have discussed the charge(s), the facts and the possible defenses with my attorney. All of the foregoing rights, waiver of rights, elements, possible penalties, and consequences, have been carefully explained to me

5

> by my attorney. My attorney has not promised me anything not mentioned in this plea memorandum, and, in particular, my attorney has not promised that I will get any specific sentence.

(ECF No. 16-17 at 5.) Eash's trial counsel testified as follows at the evidentiary hearing in the state habeas action when Eash (*pro se*) asked counsel if she advised him that he could receive no more than five to 13 years on the charge of robbery with use of a deadly weapon:

> I explained to you precisely what's in the transcript, that pursuant to negotiations, in exchange for your plea of guilty, you would stipulate to serve a term of four to ten years in the Nevada Department of Corrections on the underlying robbery charges contained in Count IV. And a mandatory consecutive term of one to three years on the deadly weapon enhancement, for a total of five to 13 years on Count IV.
>
> As to Count III, I went further and told you the parties were free to argue for what they believed to be an appropriate sentence, including any sentence attendant to that charge to run concurrently or consecutively to Court IV.

(ECF No. 17-5 at 25-26.) On cross-examination, Eash's trial counsel testified further:

> Q. Ms. Branzell, did you promise to your client, Mr. Eash, that the stipulated sentence that you and the State reached in this case would be a guaranteed sentence that Judge Hardy would impose at sentencing?
>
> A. No. In fact, not only was that information contained in the Guilty Plea Memorandum, but during my previous conversations with Mr. Eash, and as a general practice of my own, during my conversations with my client I have my own checklist that—as far as I know I'm the only one that uses this particular checklist. And I use this to make sure that my clients understand that there are no guarantees that I can give them. And it's a simple little document.
>
> Q. Does the checklist include the idea that you told your client that a stipulated sentence is something that was not binding on the court?
>
> A. The checklist includes a sentence. It says, "There are no promises in this matter. The judge determines sentence and custody status."
>
> I go over this checklist with my clients, typically at mandatory status conferences, or when they choose to waive the preliminary hearing, I have them sign this checklist and date it. And Mr. Eash signed this checklist, acknowledging that I told him that there were no promises in this matter, and that the judge determines sentencing. His signature is reflected at the bottom of this checklist, as is the date of October 1, 2015.

(*Id.* at 27-28.) She testified further, under questioning by the court:

> THE COURT: … Ms. Branzell, you indicated that there was something else that you wanted to talk about. You wanted to add something.
>
> THE WITNESS: Your Honor, just, during the arraignment process, it is also my general practice that I read the Guilty Plea Memorandum to my clients. I don't simply just hand the document to them, I read it to them.
>
> And that being said, paragraph 12 on page 5 was read to Mr. Eash. And the sum and substance of paragraph 12 on page 5 indicates that he understood that the Court was not bound by any agreement of the parties in this matter, and sentencing was determined solely by the Court.
>
> Essentially saying that I, as his attorney, [have] not promised him anything in the plea memorandum, and have specifically not promised that he will get any specific sentence.

(*Id.* at 29.) In light of the evidence, it was reasonable for the state court to determine that Eash's counsel did not perform deficiently in advising Eash, before his plea, with respect to the sentence he could receive.

Moreover, on the question of prejudice, it was reasonable for the state court to rule that, at any rate, Eash was not prejudiced by any alleged deficient performance of his counsel. Again, the plea agreement signed by Eash stated:

> I understand that the Court is not bound by the agreement of the parties and that the matter of sentencing is to be determined solely by the Court.

(ECF No. 16-17 at 5.) And, when Eash was canvassed regarding his plea, the judge explained to him that the court was not bound by the plea agreement with respect to the sentence, and Eash said he understood:

> THE COURT: Mr. Eash, it's important for you to understand that a District Judge in the State of Nevada has independent authority to impose sentence. The Judge is not bound by what the defendant wants, or the parties negotiate.
>
> It's important to me, as a Judge, to know what the attorneys contemplate. It's also important for me to independently read the Presentence-Investigation Report, to consider you circumstances in the past, the circumstances of this offense, your age, your family, your future, and then I would make the very best decision I could.
>
> But I cannot promise you this morning that I will follow this stipulated sentence presented to me. Do you understand that?
>
> THE DEFT: Yes, sir.

>            THE COURT:            Count 2 [eluding or failing to stop on the signal of a peace officer, endangering other persons or property] can result in 1-to-6 years in the Nevada Department of Corrections. It's also a probation-eligible [offense]. There could be a discretionary fine imposed.
>
>            Count 2 may or may not be consecutive to Count 4 [robbery with a deadly weapon]. Count 4 contemplates a range in the Nevada Department of Corrections between 2-and-15 years in prison. That is not probation-eligible. And because of the firearm, there is a consecutive mandatory term of imprisonment. Mandatory consecutive of 1-to-15. Do you understand?
>
>            THE DEFT:            Yes, sir.
>
>            THE COURT:            2-to-15, on the first part of Count 4; 1-to-15 on the second part of Count 4.
>
>            I'm not trying to threaten you, and I'm not trying to make you nervous, I just want to be clear that you understand the decision is mine. Are you ready to go?
>
>            THE DEFT:            Yes, sir.

(ECF No. 16-18 at 10-11.) Eash's statements in open court, that he understood the sentencing court's discretion, despite the agreement of the parties in the plea agreement, carry significant weight. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea.") Given the language in the plea agreement that Eash signed, and the judge's canvass of Eash, it was reasonable for the state courts to determine Eash was not prejudiced by any inaccurate advice regarding his potential sentence allegedly given to him by his counsel before he pleaded guilty.

The Nevada Court of Appeals' ruling, denying relief on the claim in Ground 2A, was not contrary to, or an unreasonable application of, *Strickland* or any other United States Supreme Court precedent, and it was not unreasonable considering the evidence. The Court will thus deny Eash habeas corpus relief on Ground 2A.

///

**C. Ground 2B**

In Ground 2B, Eash claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel, because Eash's trial counsel first told Eash that she had a statement from the robbery victim saying police threatened the victim with arrest unless he made a statement against Eash. (ECF No. 6 at 3.) Later, trial counsel told Eash that she did not have such a statement and that the robbery victim would testify against Eash. (*Id.*) Eash's claim, as presented in his petition, in its entirety, is as follows:

> Mrs. Lynn Branzell [trial counsel] also told me at one point in time that she had a statement from my friend Trevor Nenzel that said he was forced to make the statement through threat of arrest and want to help me any way he could, then at a later date in court she told me she had no such thing and that he was there to testify against me. Trevor Nenzel has told my family that he had only told my Public Defender that he would testify on my behalf and in the truth of the situation.

(*Id.*)

Eash asserted this claim in his state habeas petition. (ECF No. 16-36 at 8.) At the evidentiary hearing on that petition, Eash's trial counsel testified that she spoke with the victim, Trevor Nenzel, and he gave her "varying inconsistent stories." (*Id.* at 30.) She testified that "on different occasions" Nenzel told her that "he felt threatened by Mr. Eash, and that he would go forward as a State's witness against Mr. Eash." (*Id.*) She testified further:

> However, on other occasions he was equivocal, and he said, "No. I don't want to go forward as a State's witness. I won't testify against Cam, because Cam is my friend."
>
> So he was equivocating to the point where I shared this with Mr. Eash, and I said—and I remember the words that Mr. Nenzel was the wild card in this matter, and I don't know how he's going to testify.
>
> If my recollection has not escaped me, I believe during a conference between Mr. Bogale, with the District Attorney's office, myself, and Mr. Nenzel, Mr. Nenzel shared with Mr. Bogale and myself that, yes, he was willing to go forward as a State's witness, testify against Mr. Eash, and say that he was the victim of a robbery.
>
> So this information was shared with Mr. Eash. And along that vein, I said, "We can take our chances and roll the dice, and I would be happy to do so." And as a result, I prepared for trial.

9

> This is my trial notebook. I was ready to go. Up until the very end when Mr. Eash decided he did not want to roll those dice, and he didn't know how Trevor was going to—Mr. Nenzel was going to testify. As a result, he opted to accept the negotiations tendered by the State.

(*Id.* at 31; *see also id.* at 31-32, 34-35, 41.) Eash's trial counsel testified as follows about what the victim told her regarding the incident that led to the charges against Eash:

> He said that he held the gun on his lap, pointed—Mr. Eash held the gun on his lap, pointed at Mr. Nenzel, told him to get out of his car. Mr. Nenzel got out of the car, and Cam took the car.

(*Id.* at 32; *see also id.* at 35.) Eash's trial counsel testified as follows about Eash's decision to plead guilty despite knowing that the victim was equivocating about his testimony:

> Q. Did Mr. Eash make a decision? Did he tell you, 'Look, I will take a plea agreement because I just can't rely on Mr. Nenzel as a witness?"
>
> A. Yes.
>
> Q. I mean, he understood the pros and—he understood the strengths and weaknesses of the case?
>
> A. Yes. And as a matter of fact, he sent Kites to me indicating that he wanted to just do his time.
>
> * * *
>
> THE WITNESS: Essentially he's just saying he wanted, to "go ahead and take my time so I can move on down the road, continue with my life."
>
> * * *
>
> THE WITNESS: "I don't care what the sentence is. Please get me an offer on Count 4 on that day. Thank you."

(*Id.* at 41-43; *see also id.* at 47-51.) At the state court evidentiary hearing, Nenzel testified that he could not remember anything about the incident that led to the charges against Eash because he was using drugs at the time, and because he sustained a head injury after the incident. (ECF No. 17-17 at 7.)

The state district court denied relief on this claim of ineffective assistance of counsel, ruling as follows:

> The Court denies the second claim [the claim that is Ground 2B in this action]. Ms. Branzell testified that she never told Eash that she had a statement from Nenzel that exculpated Eash. The Court finds Ms. Branzell credible and Eash's contrary testimony incredible. Accordingly, the Court

> finds that Eash failed to prove that Ms. Branzell was deficient in her representation or that Eash suffered prejudice.

(ECF No. 17-19 at 5.)

On the appeal in the state habeas action, the Nevada Supreme Court affirmed, ruling as follows:

> The district court found that even if this claim were viewed as a claim of ineffective assistance of counsel, Eash would not be entitled to relief because he failed to demonstrate ineffective assistance of counsel. The record supports the district court's finding, and we conclude Eash failed to demonstrate counsel's performance was deficient.

(ECF No. 17-35 at 4 n.3.)

This Court determines that, in light of the evidence—particularly Eash's trial counsel's testimony at the evidentiary hearing in state court—the state courts reasonably ruled that Eash did not show his trial counsel's performance to be deficient as alleged by Eash in this claim. Moreover, the state court rulings on this claim were not contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent. The Court will thus deny Eash habeas corpus relief on Ground 2B.

### D. **Certificate of Appealability**

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court of the United States has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Applying the standard articulated in *Slack*, the Court finds that a certificate of appealability is unwarranted.

The denial of a certificate of appealability by this Court does not preclude Eash from appealing and seeking a certificate of appealability from the Ninth Circuit Court of Appeals. To appeal, Eash must file a timely notice of appeal in this Court

///

**IV. CONCLUSION**

It is therefore ordered that the Petition for Writ of Habeas Corpus (ECF No. 6) is denied.

It is further ordered that Petitioner Cam Eash is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly.

DATED THIS 14th Day of May 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE